1
2
3
4
5
6
7                          **UNITED STATES DISTRICT COURT**

8                             **DISTRICT OF ARIZONA**

9    Andre McRae,

10                    Petitioner,
                                                      CV 13-2103-TUC-RM (JR)
11   vs.
                                             **REPORT AND RECOMMENDATION**
12   Louis W. Winn Jr.,

13                    Respondent.

14

15   _____

16          Pending before the Court is a Petition Under 28 U.S.C. § 2241 for a Writ of

17   Habeas Corpus by a Person in Federal Custody filed by Andre McRae ("Petitioner").

18   (Doc. 1).  As explained below, the Magistrate Judge recommends that the Petition be

19   dismissed.[1]

20   _____

21   [1] This case was randomly reassigned to Magistrate Judge Rateau on April 4, 2016.
     (Doc. 15).
22

1    The Magistrate Judge also previously issued an Order to Show Cause based on

2 Petitioner's failure to provide notice to the Clerk of Court of his current address

3 (Doc. 17).   Subsequent to issuing the Order to Show Cause, the Magistrate Judge

4 discovered that Petitioner had filed a more recent case with the Court in which he had

5 provided a more current address.   As such, the Magistrate Judge did not recommend

6 the dismissal of this case based on Petitioner's failure to notify the Court of his

7 address.   Rather, the Magistrate Judge recommends that the District Court direct the

8 Clerk of Court to mail this Report and Recommendation to both the address listed in

9 the docket of this case and to Petitioner's most recently provided address as reflected

10 in the case docketed as *McRae v. United States*, CV 15-0439-RM.

11 **I.      Background**

12    Petitioner is incarcerated in the United States Penitentiary in Tucson, Arizona

13 ("USP Tucson").   He is serving a 687-month sentence.   His projected release date is

14 October 29, 2054.   This action concerns an incident on October 9, 2012 when

15 Petitioner gave a letter to an officer that was determined to contain suggestive

16 statements and inappropriate comments.   He was sanctioned with the loss of 27 days

17 of good conduct time.[2]

18    Petitioner filed this action seeking to expunge the incident report and the loss

19 of his good time conduct.   In Ground One, he argues that the Detention Hearing

---

20

21 [2] He was also sanctioned with 30 days in disciplinary segregation and the loss of
22 commissary privileges for one year.

2

1   Officer ("DHO") refused to adhere to the order from the Regional Director and

2   overturn the sanctions.  In Ground Two, he argues that the DHO's findings that he

3   committed the charged offense, is not supported by sufficient evidence to comport

4   with Due Process.  In Count Three, he argues that the DHO's findings that he

5   committed the charged offense, is not supported by sufficient evidence to comport

6   with Bureau Policy.

7           Respondent argues that the Petition should be dismissed because the record

8   demonstrates that Petitioner was afforded due process and "some evidence" supports

9   the DHO's decision.[3]

10  **II.   Facts**

11          On October 9, 2013, a female correctional officer was escorting Petitioner

12  back to his cell from the Law Library.  (Doc. 13, Attach. 2, p. 29).[4]  Petitioner gave

13  the officer a letter stating that it was nothing more than an apology for his cellmate's

14  use of profanity.  *Id.*  The officer placed the letter in her pocket, forgot about it and

15  later discovered it while doing laundry.  *Id.*  The 4-page handwritten letter reads in

16  part:

17          What's good young lady…

18  _____

19  [3] Petitioner alleges that he exhausted his administrative remedies with respect to the
    allegations in the Petition.  Respondent notes that although Petitioner skipped a level
20  of administrative review, Respondent does not contest that allegation.  As such, the
    Court will proceed as if Petitioner's allegations were properly exhausted.

21  [4] The Memorandum prepared by the Operations Lieutenant mistakenly states that the
    incident occurred on October 16.  That was the date the Memorandum was written.
22  (*Id.*).

….off the record I dig the hell out of you.  You have this aura about yourself that exudes some of the most attractive [illegible].  And any man with some sense should acknowledge your presence…

You know you are a Cutie Right?   Hands Down outside this environment I would pursue you like a medical student does a Doctorate.  Your smile, swag and character itself is so appealing and it would be a crime if I never brought this to your attention.  I am mindful of where we are and it is not in my Bloodline to Kiss And Tell…

and I know I have piqued your interest as well, because a woman's eyes don't lie…

Assuming I am right and your curiosity is at it's tipping point…

I'm not a RAT, our business is our business and anything that concerns myself or you (Assuming) is NO ONE else' concern…

It is unfortunate that I had to meet you under these terms.  There is no way I could allow you to pass me by in those streets whether it was at a red light, vegetable aisle in the grocery store or out having dinner with you.  You will acknowledge my interest in you…

I'm just sure you will Agree and be willing to converse with me and get to know each other…

When I go back to court and win the [illegible] of my case.  I would be on the first flight back to Tucson to take you with me for a whole new life, career and husband…

It is not even about the sexuality of the woman however she may lie…It is the Aura, and Spirit that she must possess to catch my eye.  And you have done that from the first time I ever seen you back in A-1 when you were on the midnight shift…

. . . P.S. I don't Kiss and Tell…Promise

(*Id*. Attach 3, ps. 31-34).

On October 16, 2012, the Federal Bureau of Prisons ("BOP") prepared an

Incident Report charging Petitioner with a Code 206 prohibited act, "making sexual

1   proposals or threats to another" (*Id.* Attach 2, p. 26). A copy of the report was

2   delivered to Petitioner. (Doc. 13, Ex. 1, at ¶ 4). The matter was referred to a Unit

3   Discipline Committee ("UDC") for hearing. *Id.* The hearing occurred on October

4   22, 2012 at which time Petitioner claimed the letter was not sexual in nature and that

5   he meant only to resolve an issue with other inmates. (*Id.*; Doc. 13, Attach. 2, p. 26).

6   Based on the severity of the report, the UDC referred the matter to a DHO. (Doc. 13,

7   Attach. 2, p. 26).

8       On November 4, 2012, the incident report was re-written to include additional

9   details. (*Id.* at p. 27). Another hearing was held on November 7, 2012 where

10  Petitioner again asserted that the letter was not sexually intended and had no sexual

11  language in it. (*Id.*). The matter was again referred to a DHO and another hearing

12  was held on November 27, 2012. (*Id.*; Doc. 13, Attach. 4, p. 38). At the hearing,

13  Petitioner stated, "I'm not denying it but the letter does not contain any sexual

14  intent." (Doc. 13, Attach. 4, p. 39). Based on the evidence and Petitioner's

15  admission to the charge, the DHO found that Petitioner committed the prohibited act

16  of making sexual proposals or threats to another in violation of Code 206. (*Id.*).

17      Petitioner appealed on December 5, 2012 and on February 4, 2012, the

18  Regional Director directed the DHO to reconsider. (*Id.* at p. 42-43). That decision

19  was made because the Petitioner's behavior was found to be more like a Code 299

20  violation most like 206, rather than Code 206 alone. (*Id.* at p. 47). A Code 299

21  violation is charged for conduct that "disrupts or interferes with the security or

22  orderly running of the institution or the Bureau of Prisons most like another High

1   severity prohibited act." 28 C.F.R. § 541.3, Table 1. With respect to the sanction,

2   the Regional Director stated that "[o]n appeal, the appropriate reviewing official may

3   approve, modify, reverse, or send back with directions, including ordering a

4   rehearing, any discipline action of the Unite Discipline Committee or Discipline

5   Hearing Officer, but may not increase any valid sanction imposed." (Doc. 13,

6   Attach. 4, p. 44).

7   　　　On February 14, 2013, the DHO reconsidered the matter and found that

8   Petitioner clearly made suggestive statements and inappropriate comments. (Doc.

9   13, Attach. 5, p. 46). The DHO upheld the original sanctions finding that Petitioner

10  committed the prohibited act of conduct which disrupts/interferes with the orderly

11  running of the Institution, Code 299 most like Code 206, making a sexual proposal.

12  (*Id.*)

13  **III.    Law**

14  　　　**A.    The Due Process Requirements in a Prison Disciplinary Hearing**

15  　　　The United States Supreme Court has established five procedural safeguards

16  for inmates when the loss of good conduct time credits are involved: (1) an inmate

17  must receive written notice of the infractions(s) at least 24 hours before the

18  disciplinary hearing; (2) an inmate has a right to call witnesses unless it would be

19  unduly hazardous to institutional safety or correctional goals; (3) an inmate is entitled

20  to assistance in preparing and presenting a defense to the disciplinary charge; (4) an

21  inmate is entitled to a copy of the disciplinary findings; and, (5) an inmate has a right

22

1    to have a sufficiently impartial decision maker. *See Wolff v. McDonnell*, 418 U.S.

2    539, 563-72 (1974).

3    A review of the record in this case reveals that the *Wolff* procedural safeguards

4    were met.  Petitioner received a copy of the incident report on October 16, 2012, the

5    same day the incident report was written. That was well in advance of the October

6    22, 2012 hearing before the UDC.  On November 4, 2012, the incident report was re-

7    written to include additional facts.  Petitioner received a copy of that report on the

8    same day well in advance of the November 27, 2012 hearing before the DHO.  On

9    December 5, 2012, Petitioner appealed the incident report through the administrative

10   remedy process and on February 14, 2012, the DHO reconsidered its finding and

11   changed the code violation to comport with the evidence.

12   At all steps of the process, Petitioner received timely written notice of the

13   infraction.  He was provided disciplinary hearings at each step and his right to call

14   witnesses at the hearings was honored. He does not allege that he was not provided

15   with assistance in preparing and presenting his defense. Nor does he allege that he

16   was not provided with a sufficiently impartial decision maker.  Petitioner received all

17   of the procedural safeguards required by due process before he was sanctioned with

18   the loss of 27 days of good conduct time.

19       **B.    The "Some Evidence" Standard of Review
                 for Prison Disciplinary Hearings**

20

21   Judicial review of a prison disciplinary decision is limited to situations where

22   the prison officials acted in an arbitrary and capricious manner. *Marchesani v.*

7

1   *McCune*, 531 F.2d 459, 462 (10th Cir. 1976).  Requiring a modicum of evidence to

2   support a decision to revoke good time credits will help to prevent arbitrary

3   deprivations without threatening institutional interests or imposing undue

4   administrative burdens. *Superintendent Massachusetts Correctional Institution,*

5   *Walpole v. Hill,* 472 U.S. 445, 455 (1985).  Due process requirements are satisfied if

6   "some evidence" supports the decision of the prison disciplinary board.  *Id.*  A court

7   may overturn the decision only if no reasonable adjudicator could find the defendant

8   guilty of the offense on the basis of the evidence presented. *Henderson v. United*

9   *States Parole Commission*, 13 F.3d 1073, 1077 (7th Cir.1994). The standard is

10   minimally stringent and only requires any evidence in the record that supports the

11   conclusion reached by the disciplinary board.  *Cato v. Rushen*, 824 F.2d 703, 705 (9th

12   Cir. 1987).

13       Here, the evidence supporting the DHO's finding *exceeds* the "some

14   evidence" standard required in prison disciplinary proceedings. Petitioner does not

15   dispute that he wrote the letter and that he gave it to the correctional officer when she

16   was escorting him back to his cell.  Rather he argues that the letter was not

17   suggestive and inappropriate.  The DHO found otherwise.  More than "some

18   evidence" supports that finding.  Petitioner called the officer a "cutie."  He

19   commented on her "smile, sway and character."  He offered to take her away and

20   become her husband.  And he twice promised her that he would not "kiss and tell."

21   Petitioner's behavior clearly disrupted and interfered with the orderly running of the

22

8

1   Institution. Accordingly, the Court will recommend that the District Court dismiss

2   the Petition.

3   **IV.    Recommendation**

4           Based on the foregoing, the Magistrate Judge recommends that the District

5   Court enter an order **DENYING** the Petition Under 28 U.S.C. § 2241 for a Writ of

6   Habeas Corpus by a Person in Federal Custody (Doc. 1).

7           This Recommendation is not an order that is immediately appealable to the

8   Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1),

9   Federal Rules of Appellate Procedure, should not be filed until entry of the District

10  Court's judgment.

11          However, the parties shall have fourteen (14) days from the date of service of

12  a copy of this recommendation within which to file specific written objections with

13  the District Court.  See 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the

14  Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen (14) days

15  within which to file a response to the objections.  If any objections are filed, this

16  action should be designated case number: CV 13–2103–TUC–RM.  Failure to timely

17  file objections to any factual or legal determination of the Magistrate Judge may be

18  considered a waiver of a party's right to de novo consideration of the issues.  *See*

19  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003)(en banc).

20          The Magistrate Judge further recommends that the District Court direct the

21  Clerk of Court to mail this Report and Recommendation to both the address listed in

22

the docket of this case and to Petitioner's most recently provided address as reflected

in the case docketed as *McRae v. United States*, CV 15-0439-RM.  That address is:

     Andre McRae
     # 20831-057
     COLEMAN-FL-COLEMAN-II-USP
     U.S. PENITENTIARY
     P.O. BOX 1034
     COLEMAN, FL 33521


Dated this 2nd day of November, 2016.

Honorable Jacqueline M. Rateau
United States Magistrate Judge